or to have it submitted as you like. May it please the court, good morning your honors. As a matter of procedure in my office to agree to submit a case on the briefs even where the other side waives, I always have to get permission. Very well then. I obviously am not in a position to do that at the moment, but I will make it brief. May it please the court. Mr. Winlock's unsatisfactory. How vast is the authority of the merit system protection board to retry a case without having any witnesses appear in front of it in an instance where the case clearly reflects the need to have heard witnesses testify in order for a correct decision to be reached? Well, I will answer that question, but I will say that I'm not sure I agree with the premise of the question that this is the case that depended on witness. The board does have plenary authority to review a case before it and only defers or this court has said deference is due to the administrative judge only when it comes to credibility determination. Is that the Hillen line of cases that involves that issue? Well, it's Hillen that talks about credibility determinations. Connolly talks about the board's plenary authority to review. Connolly is the general rule, but Hillen's that exception for I saw the witness, I saw the sweaty palms, I saw the evasive look, and therefore I'm in a preferable position to make determinations as to credibility. That's the essence of it. Exactly, and it particularly pertains to demeanor-based credibility determinations, which is not what's at issue in this case. There's no indication that the administrative judge made demeanor-based credibility determinations rejecting the testimony presented by the agency's witness. The administrative judge simply determined that that evidence was not relevant because even though the SOPs may have been important, or the SOPQs may have been important, the fact that Mr. Winlock was able to perform the other duties of his position in the administrative judge's opinion... But the administrative judge said something else which I thought interesting, which is that the SOPQs didn't really test the important features of his job. The SOPQs are bad tests in effect. It's like as if, well, you understand the argument now. The board seems to have rejected that. They didn't quite come down full four square on that, but they seem to have rejected that. Because what the administrative judge appears to have done was to have conflated two separate duties of Mr. Winlock's. Mr. Winlock had a duty to be knowledgeable with respect to the SOPs, and the SOPQs tested his knowledge. He had a separate duty to perform supervising of screeners to answer questions that came up during screening that were based on SOPs, and Mr. Winlock got good performance requirement that he be knowledgeable, and the SOPQs directly tested that knowledge, and there was substantial testimony from the agency, not only talking about how the SOPQs were developed, but the fact that they had an expert determine that the questions on the SOPQ and the number of questions, the passing rate, everything else was statistically relevant to an individual's knowledge of the SOP. So there were two separate duties, and what the administrative judge was saying was the quiz, while it might test his knowledge of the SOPs, didn't necessarily indicate how he would perform in the field, but that's a separate duty. It might be that some of the questions in the SOPs, I mean, everyone agrees that he has to have knowledge of the SOPs. On any particular instance when Mr. Winlock's actual performance might be being evaluated or reviewed or surveyed, a particular question might or might not come up in the SOP. That doesn't mean he doesn't need to know that question. So that's why there's the knowledge and the performance. Wouldn't it be your position that the government, it doesn't matter to the government whether the SOPQ was testing what's in the SOP, or whether what's in the SOP has to do with the field at all. It's a test. The government's entitled to give a test. You flunk the test. The test has at least some marginal relationship to the performance of duties and the case. Well, I agree with that. You wouldn't go that far, surely. If you listen carefully to Judge Clevenger's question, Judge Clevenger's question would allow the government to ask Mr. Winlock, what is the exact population of Russia? And if he missed it, he's out. No, surely not. I wouldn't go that far, and it's not necessary to go that far in this case. The SOPs clearly were... I said the SOP has to have some marginal relevance to the performance of the job. I thought that was part of the question. The population of Russia presumably wouldn't have some relation. Yeah, that's right. Just at the margin. You were talking about how, well, the AJ conflated all these things, and your real answer to that is poppycock. You don't care whether it got conflated or uncomplated. You're giving your employee a test. The test has some, at least marginal, relationship to the performance of duty. I mean, it would be, I suppose, like the attorney general requiring all assistant attorney generals to be able to prove that they could cite check, even though they're not called upon to cite check. That would be a great way to get rid of employees. I do agree with your honor. I think my answer was just by way of explaining where I think the administrative judge went wrong, and the direction I think he was heading in. But yes, I do agree. This gentleman's duty was to supervise. He sort of like sits up in the glass window, that's two-way glass, and looks down on all the people like me. I have an artificial hip being patted down, and my luggage being looked at. That's right? Yes, and to answer questions, to watch his screeners, to answer questions that may arise. And somehow this was only three percent of his job duty? The score on the quiz was 3.146 percent of his job evaluation. But this court has said that merely because an agency gives a certain percentage doesn't make it more or less critical. What were the other 96 some odd percents of his job evaluation? Some of it was how he performed in the field. There were other tests that he had to take, other objective actual testing situations, his management abilities, supervisory abilities. I can point the court to the actual performance matrix, which sets out all of the duties of his position. It's actually in, I think it's in two places. It's in our brief at our appendix, page 17. It's also in the joint appendix. There was readiness for duty. There were various, as I said, competencies that he had to know, his supervisory accountability. But the fact is that the- And actually just making certain that the fellows who check the luggage and pat me down find the gun is only three percent of his duty. But again, the fact that, first of all, it was 10 percent, nearly 10 percent of the entire- It may have only been three percent of his job evaluation, but it was 10 percent of the management and technical proficiency critical requirement, which in itself was about a third of his job evaluation. And again, this court said in Lovshin that the percentage that an agency assigned, sometimes the agency even leaves very important factors out of the job evaluation, and that doesn't mean that they're critical to the job. In this case, the agency specifically denominated a critical element. There was testimony as to how critical knowledge of the SOPs was to Mr. Winlock's job. It was unrebutted testimony, and the agency has wide discretion to assign duties and also to decide on testing methods. Coming back, if I could, to Judge Klementer's first question, which to me really does hit at the hardest issue in the case. It's been applied more generally, and notwithstanding my flip answer about Russia, but what puzzles me here is how far the board can go by way of evaluating something like the responsiveness of the test to the duties of the job. I mean, in a way, the administrative judge didn't quite say this, but she seemed to be touching on this issue of saying, in effect, that there was really no evidence that the quiz really demonstrated knowledge of the SOPs. So how far does the board go in doing that? I mean, if this were a race case, for example, we'd go pretty far to make sure that you weren't using a test as a pretext for a racially discriminatory hiring system or firing and so forth. Obviously, that's not an issue here, but how far can the board go in a case that doesn't involve allegations of invidious selection in testing the test? Well, I think the board tried to answer that question by saying that the agency has very wide latitude. Very wide latitude, but presumably, I mean, that's a good start, but where does that latitude end? Is there a way to characterize how much authority the board has in your view? I don't know if there's a way to concretely say that, but obviously, at a minimum, agencies can't take actions that are arbitrary and capricious. So if there was completely no relationship... So the Russia question would be out. I would say the Russia question would probably be out. But short of that, as marginal relevance to Judge Clevenger's phrase, that's probably as far as the agency needs to go because it does have broad discretion to not only assign duties, but decide on methods for assessing those duties. What do you take to be Mr. Winlock's primary arguments in his brief? He's saying that he's questioning whether or not there's a clear and direct nexus between his failure of the quizzes and a legitimate government interest. That argument seems to me to be conclusively answered by precedent of this is by definition inherently related to the efficiency of the service. The nexus is not only according to the agency's policy, but basically according to the precedent of this court. Nexus is presumed when there is poor performance proved because the government obviously has a legitimate government interest in having its employees perform satisfactory. I have a question about the Douglas factors. I understand how the Douglas factors work in a case of disciplinary action, 75-11-13, or its equivalent here. But it's unclear to me why Douglas really ought to apply in a performance-based removal. Let's take the case in which, as Judge Clevenger's example, in which trial attorneys in the civil division are deemed to have a critical requirement of their job is site checking. And two attorneys, one who's been there two years and another who's been there 20 years, fail the site checking test. And they're both removed. Does Douglas require us to consider whether the attorney with 20 years ought to have been retained and the attorney with two years not? That seems like an odd application of Douglas. Yeah, it's a very good question. And as the court is aware, in a typical chapter 43 action, of course, chapter 43 doesn't apply here. But the equivalent. The equivalent, exactly. In a typical chapter 43 case, there is no mitigation of penalty. There's no review of the Douglas factors. So what the TSA has crafted here is they don't have sort of separate chapter 43-like action and chapter 75-like action. But they've kind of done sort of a hybrid creation. And what they've created is one action that must promote the efficiency of the service. But in cases of poor performance, they spell out the fact that nexus is presumed. And then they limit the penalties. Because they don't want to keep, it doesn't make any sense to keep an employee in a position that he is not capable of rehabilitation or that it wasn't his fault and so forth. So they deal with that, TSA deals with that by limiting the penalties to either removal or to reassignment to another position outside the screening system for which the employee is qualified if there's one available. And so the Douglas factors have limited applicability in this case. If, for example, the deciding official found that Douglas factors weighed in favor of mitigation, then he would in fact look for another position that the employee was qualified outside the screening area. If there was no Douglas factor weighing in favor of mitigation, he might not even consider that. In this case, the deciding official did in fact consider whether there were other positions available, but there were none. So it's a very, it is an odd situation and it has limited applicability both because it's performance and sort of by analogy to chapter 43 and also because of the employee. If you're going to hive Douglas on to this type of situation, more often than not, it's going to be beneficial for the employee. Yes, that probably is the case. We can probably expect the government in the future in one of these cases telling us that Douglas doesn't apply. I wouldn't be a bit surprised. A little nugget of wisdom comes from all these. You, you mentioned that. I do understand, it is my understanding that going forward, TSA has modified its directives with respect to performance. I think you mentioned that this issue was settled with respect to chapter 43. Is it settled by a case from this court? Yes, yes. I believe it's like the Lysakki case. I believe that is the case that says, but if I'm wrong, please forgive me, but I know, yes, that for a fact there is a case out of this court that specifically says with respect to chapter 43 performance cases, there is no mitigation of the penalty. Thank you very much. Thank you. All right.